IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

FILED

Jan. 26, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

JANE DOE A AND MOTHER A,
JANE DOE C AND FATHER C,

    Plaintiffs-Appellants,

Vs.

COFFEE COUNTY BOARD
OF EDUCATION, JOE BRANDON,
BOBBY CUMMINGS, NELSON
JOHNSON, MARIANNE BRANDON,

    Defendants-Appellees.

Coffee Circuit No. 24,057
C.A. No. 01A01-9506-CV-00252

FROM THE CIRCUIT COURT FOR COFFEE COUNTY

GERALD L. EWELL, SR., JUDGE

Michelle M. Benjamin of Winchester
For Plaintiffs-Appellants

L. Hale Hamilton, Spears, Moore, Rebman,
& Williams of Chattanooga
Hugh P. Garner, Garner, Lewis & Prickett
of Chattanooga
For Appellees

*AFFIRMED*

Opinion filed:

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

ALAN E. HIGHERS, JUDGE

HEWITT P. TOMLIN, JR., SENIOR JUDGE

This is a suit by two high school students and their parents seeking damages resulting from alleged assaults by a high school coach.

In November of 1989, plaintiffs Jane Doe A, Jane Doe C, Mother A, and Father C,[1] brought suit against Ted Peercy,[2] a coach and teacher at Manchester Central High School (Central), the Coffee County Board of Education (Board), Joe Brandon and Bobby Cummings, Superintendents of Coffee County Schools during Peercy's employment, Nelson Johnson, the principal of Central High School, and Marianne Brandon, a school counselor at Central High School. The amended complaint alleges that defendants Joe Brandon, Cummings, Johnson, and the Board[3] are liable for negligently supervising Peercy; that defendants Joe Brandon, Johnson and Board are liable for negligently hiring Peercy; that defendant Marianne Brandon is liable for negligently failing to report assaults upon the plaintiffs; and that defendants Joe Brandon, Cummings, Johnson, and Board are liable for the false imprisonment of the plaintiffs due to these defendants' "apparent approval and ratification of the use of additional locks" in Peercy's office. The facts are as follows.

In May of 1985, Joe Brandon, then Superintendent of Coffee County Schools, and Nelson Johnson, Central principal, recommended Ted Peercy to the Board to fill a vacant position on Central's faculty. The Board hired Peercy to begin in the Fall of 1985 as a teacher and head basketball coach at Central High School.

Plaintiffs' claims against defendants are primarily premised on the

---

[1]Originally there were three other plaintiffs to this suit, Jane Doe B, Jane Doe D, and their father, but those plaintiffs' claims were dismissed as untimely by this Court.

[2]The plaintiffs' claims against Peercy were settled prior to trial of this action.

[3]The amended complaint alleges that the Board is liable for the actions of Joe Brandon, Nelson Johnson, Bobby Cummings, and Marianne Brandon, under the doctrine of respondeat superior.

installation and maintenance of door locks in Coach Peercy's office. In the 1985-86 school year, pursuant to Peercy's request, the lock to the entrance door of Peercy's office was changed. Sometime thereafter Peercy also requested and received a keyed slide-bolt lock which was placed on the interior side of Peercy's exit door leading to the boys basketball locker room. A keyed slide bolt lock was also placed on the interior side of a storage room which was adjacent to the boys basketball locker room. There was disputed testimony regarding whether a keyed slide-bolt lock was also placed on the interior of the entrance door to Peercy's office.[4] The entrance door led to a hallway connected to the school gym. The keyed slide-bolt locks worked such that if the bolt was in place, no one could enter or exit the office without a key.

The school's procedure for changing a lock required that a request be made to the athletic director who would then forward the request to the assistant principal. This policy was followed when Peercy requested the lock changing which was ultimately approved by principal Johnson. School policy also required that a duplicate of all keys to all doors in the school be kept in the school vault in the school's main office. The parties dispute whether this policy was followed with respect to Peercy's front door lock. In addition, the plaintiffs allege that no duplicate keys were maintained in the school office vault for the slide-bolt lock on the interior of Peercy's office exit door or the alleged keyed slide-bolt lock on the interior of Peercy's office entrance door.[5]

---

[4]In August of 1990 when the plaintiffs' attorney went to Central for the purpose of inspecting and photographing Peercy's office and the adjoining rooms, the door leading into Peercy's office from the hallway had no sliding-bolt lock affixed to it (on the interior or otherwise). Plaintiffs maintain that the entrance door to Peercy's office was replaced in an effort to cover up the negligence of the defendants, although defendants' introduced proof that no such lock was ever present on this door.

[5] The plaintiffs acknowledge that the maintenance of duplicate keys for the interior lock on the exit door and the alleged interior lock on the entrance door would not provide access to the office if the bolts to these locks were in place.

Plaintiff Jane Doe A attended Central High School from 1987 to 1989 during her sophomore and junior years. Jane Doe A testified that early in the 1988 school year, Peercy came to her driver's education class and requested that she come to his office to make posters for a basketball tournament. The plaintiff stated that while she was in Peercy's office making posters, he locked the door and began to massage her shoulders. Plaintiff further testified that Peercy ran his hands down her blouse and touched her breasts and that she then pushed his hands away. Peercy then allegedly "put his hands down . . . [her] shirt again." The plaintiff testified:

> At that time I was really scared. I didn't know what to do, so I jumped up and pushed his hands off of me. I told him that - - I went trying to go towards the door, and he jumped in front of me. And he told me that I better not tell anybody.
>
> \*          \*          \*
>
> I couldn't get out the door, and I just asked him to please let me out or I was going to scream.
>
> \*          \*          \*
>
> Q. What happened after you threatened to scream. You said he had threatened--
>
> A. I threatened to scream if he didn't let me out. And at that time he took his keys and took the key above -- there was a lock above the knob. And he turned the key and opened the door for me to go out. And at that time I entered the hallway. . . . And I just took off.

Plaintiff Jane Doe C began her sophomore year at Central in August of 1987. She testified that she went to Peercy's office sometime in the first semester of her sophomore year to take a makeup test. Jane Doe C stated that while she was taking the test, Peercy began to make sexually explicit remarks to her. She testified that after the remarks were made she attempted to leave the office, but could not because the door was locked from the inside. When Jane Doe C demanded that Peercy let her out of the room he allegedly grabbed her and

4

told her to "walk" for him. She stated:

> And at that time I just turned around and pushed at him and said, "Let me out of here." And I was screaming, and then I remember he took the key and he unlocked two locks. There was a lock above the door handle and he unlocked it and then he stuck it in the bottom lock and he unlocked it. . . . And then I went out of there and I went straight to . . . the cafeteria.

The plaintiffs testified that in January of 1989, after these alleged incidences transpired, they were talking with other girls in a health class regarding Peercy's misconduct. At this time, the plaintiffs allegedly discovered that Peercy had been sexually harassing and assaulting other female students, so they decided to approach the school counselor, Marianne Brandon, regarding Peercy's conduct. The plaintiffs allege that they informed Mrs. Brandon of Peercy's misconduct, but Mrs. Brandon did not report the incidences and advised the girls not to tell anyone what had happened. At trial Mrs. Brandon denied that any such conversation ever took place. In July of 1989, Peercy resigned from Central High School.

At the close of the plaintiffs' proof, the trial court dismissed the plaintiffs' negligent hiring claim and the failure to report the assaults claim apparently finding that the plaintiffs had failed to present sufficient evidence to support these allegations.[6] In its February 3, 1995 order the trial court also found that the defendants were not negligent in allowing Peercy to change the lock to his office entrance door and add the slide-bolt locks to the office exit door and storage closet, because school policy allowed coaches' to change locks in order to protect the athletic equipment which was assigned to them.[7] The court

---

[6]The plaintiffs make no argument concerning the court's dismissal of these claims, thus these arguments are considered waived by this Court. *Memphis Housing Authority v. Ramsey*, 484 S.W.2d 73 (Tenn. App. 1992).

[7]The trial court made no ruling on the issue of whether the interior slide-bolt lock on the office entrance door existed, nor did the court separately discuss the locks. The court simply stated that the "changing of locks" was consistent with

also found that the plaintiffs had failed to prove that there was not a duplicate key to the entrance door of Peercy's office available in the school vault. The court further found that the office was accessible from the boys basketball locker room, and that this was proven by the fact that on one occasion principal Johnson entered Peercy's office from the locker room in order to inspect for water damage in Peercy's office. The court ruled that even if the defendants failed to maintain a duplicate key to the front door, the plaintiffs' suit would still fail, because Peercy's alleged misconduct was not a result of the defendants' failure to maintain a duplicate key, and in any event, Peercy's office was accessible from the boys basketball locker room. The court concluded that "no conduct on the part of these defendants was a 'substantial factor' in bringing about the harm being complained of."

The plaintiffs have appealed the ruling of the trial court and present one issue for our review. As stated in their brief, that issue is:

> Whether the court erred finding that the defendants' conduct was not a proximate cause or a "substantial factor" in causing harm to the plaintiffs?

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

The plaintiffs/appellants assert that under T.C.A. § 49-6-4203(a) (b)(1990)[8]

---

school policy.

[8]T.C.A. § 49-6-4203 provides:

Legislative intent. - - (a) It is the intent of the general assembly in enacting this part to secure a safe environment in which the education of the students of Tennessee may occur.
(b) The general assembly recognizes the position of the schools in loco parentis and the responsibility this places on principals and teachers within each school to secure order and to protect students from harm while in their custody.

the defendants had a duty to provide a safe school environment and protect the plaintiffs from harm while under their care and custody. The appellants first argue that the defendants breached this duty by allowing Peercy to change the lock to his office door without ensuring that a duplicate key to the lock was maintained in the school vault. The appellants also argue that the defendants breached their duty to provide a safe school environment by allowing Peercy to install locks which locked the office doors from the interior thereby preventing anyone from entering the office or exiting the office without a key when the deadbolts were in place. They contend that these actions and inactions of the defendants violated Central's policies of maintaining a duplicate key to all doors and ensuring free egress from all rooms in the school which were frequently used by students. The plaintiffs contend that the failure of the defendants to follow these school safety policies caused the plaintiffs harm, and that the harm which was produced as a result of these actions and inactions was foreseeable by a reasonable person; therefore, the defendants actions/inactions were the proximate cause of the plaintiffs' injuries.

In *McClenahan v. Cooley*, 806 S.W.2d 767, (Tenn. 1991), Our Supreme Court established a three-pronged test for determining the existence of proximate causation: (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm complained of; (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have been reasonably foreseen or anticipated by a person of ordinary intelligence and prudence. *Id.* at 775.

As noted above, the trial court found that the plaintiffs' failed in their burden of proving that the defendants did not maintain a duplicate key to the entrance door to Peercy's office. At trial, the plaintiffs put on proof to the

contrary, but we cannot say that the evidence preponderates against the trial court's finding on this factual issue, especially in view of the fact that the trial court had an opportunity to observe the manner and demeanor of the witnesses who testified at trial. The trial court apparently found the testimony of the defendants' witnesses to be more persuasive on the issue of whether a duplicate key was maintained in the school vault. It is well settled that "[t]he weight, faith, and credit to be given any witness's testimony lies in the first instance with the trier of fact who has the opportunity to observe the manner and demeanor of the witnesses as they testify." *Koch v. Koch*, 874 S.W.2d 571, 574 (Tenn. App. 1993)(quoting *Weaver v. Nelms*, 750 S.W.2d 158, 160 (Tenn.App. 1987)). "The credibility accorded will be given great weight by the appellate court." *Id.*

Moreover, even if the defendants did in fact fail to maintain a duplicate key to the entrance door lock of Peercy's office, such a finding would avail the plaintiffs nothing, because the failure to maintain the key was not a "substantial factor" and therefore not a proximate cause of the plaintiffs' injuries.

As stated above, the plaintiffs assert that by allowing Peercy to place the keyed locks on the inside of his office doors, the defendants violated school policy which required that free egress from any room frequently used by students, not be impeded. From our reading of the transcript we fail to discern a school policy which prevented coaches' offices from being locked from the inside, whether with a key or otherwise. Mr. Brandon stated in his deposition that there were no general restrictions on the type of locks which could be used within a school, but state fire regulations required that "area[s] where children are" could not be locked from the inside. Ordinarily, we would not consider "areas where children are" to include coaches' offices. The testimony in the record only indicates that classrooms and other common areas cannot be

locked from the inside; the testimony fails to establish the existence of a school policy requiring that coaches' offices not be locked from the inside, whether with a key or otherwise.

Even if we assume arguendo that the plaintiffs sufficiently proved the existence of a school policy which prohibits the placement of interior locking locks in coaches/teachers' offices, the plaintiffs suit still fails, because the placement of the locks was not a substantial factor in producing the plaintiffs' injuries. The plaintiffs testified that they tried to get out and Peercy refused to allow them to leave until they screamed or threatened to scream, but we do not think the locks played such a significant part in the plaintiffs' injuries as to rise to the level of a "substantial factor." No one was prevented by the door locks from coming to plaintiffs' aid.

In summary, the evidence does not preponderate against the trial court's finding that "no conduct on the part of defendants was a 'substantial factor' in bringing about the harm complained of." Accordingly, the judgment of the trial court is affirmed, and the costs of this appeal are assessed against the plaintiffs.

_____
W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:


_____
ALAN E. HIGHERS, JUDGE


_____
HEWITT P. TOMLIN, JR.,
SENIOR JUDGE

9