**T.J. WEAVER, Jr., and wife, Yvonne M. Weaver, Plaintiffs,**

v.

**Paul E. NELMS, Defendant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Dec. 14, 1987.

Application for Permission to Appeal Denied by Supreme Court March 28, 1988.

Lee M. Greer, III, Paris, for appellees, Weaver.

John W. Herbert, Columbus, Ohio, Guardian ad litem for appellant, Stephanie McIntosh.

CRAWFORD, Judge.

This is but another chapter in the continuing saga of *Weaver v. Nelms*, and marks its fourth appearance in this Court.

On October 31, 1983, plaintiffs, T.J. Weaver, Jr., and Yvonne Weaver, obtained a judgment in the total amount of $380,-664.00 against defendant, Paul Nelms. Among Nelms' assets at that time was a promissory note dated January 2, 1982, in the amount of $630,050.40 payable to Nelms and signed by P.T. Grantham and Roland E. Howell (hereinafter referred to as the Grantham Note). Plaintiffs caused a garnishment to be issued against the present obligees on the promissory note, Roland E. Howell, Walter Hastings, and Frank Burnett. Because of conflicting claims with the note in question, the garnishees answered the garnishment and filed a complaint of interpleader, which seeks to determine the proper party to receive payment. The parties before the Court on this appeal are the original plaintiffs on the one hand and Nelms' granddaughter, Stephanie McIntosh, a minor represented by guardian ad litem, on the other.

The guardian ad litem contends that Nelms made a valid gift of the Grantham Note to his granddaughter, and that the payments due on the note are not subject to garnishment for the judgment against Nelms. Plaintiffs contend that Nelms did not actually make an assignment of the note, but if there were an assignment, it was a fraudulent transfer and should be set aside.

The record reveals the following facts: On October 21, 1983, just prior to the entry

of the Weaver judgment, Nelms borrowed over a million dollars from the Hardeman County Bank, Bank of Bolivar, and Merchants and Planters Bank. As security for the loans, Nelms pledged all of his assets, both real and personal, including the promissory note in question. Shortly after obtaining these loans, Nelms went to the home of his daughter, Nancy Wilson, in Memphis to assign the Grantham Note to his daughter as custodian for his granddaughter, Stephanie McIntosh, a minor. Nelms and his daughter signed the assignment, and the signatures were witnessed by his daughter's husband. Nelms then took the Note and the assignment and returned them to his personal files at his home in Bolivar, Tennessee.

The obligees on the Grantham Note were not notified of this assignment, and apparently neither Nelms nor his daughter notified anyone of the assignment, including Nelms' wife. In late 1983, Nelms made a gift to his wife of approximately $500,-000.00, and then at another time a gift of $275,000.00. The banks from which Nelms borrowed the money subsequently called his loans, and upon nonpayment foreclosed on his real estate and other collateral. The foreclosure sales satisfied all of the indebtedness to the three banks. At the foreclosure sale, Nelms' wife purchased the family home and his daughter purchased other assets, including real estate and bank stock. The foreclosure sales did not involve the Grantham Note which was not needed to satisfy the indebtedness.

■ The trial court found that Nelms did in fact assign the Grantham Note to his granddaughter. Plaintiffs asserted that no assignment had been made, because the proof showed, among other things, that in 1985 Nelms answered certain interrogatories to the effect that he owned the note subject only to an assignment to the banks as collateral. Plaintiffs also point out that in 1985, pursuant to a garnishment, they collected the installment due on the note and that no protest was made by Nelms or his daughter on behalf of his granddaughter. In this nonjury case, the trial judge, as the trier of fact, had the opportunity to observe the witnesses, Nelms, his daughter Nancy Wilson, and her husband, Bill Wilson, as they testified from the witness stand concerning the transaction. The weight, faith and credit to be given to any witness' testimony lies in the first instance with the trier of fact who has the opportunity to observe the manner and demeanor of the witnesses as they testify. The credibility accorded by the trier of fact will be given great weight by the appellate court. *See Town of Alamo v. Forcum–James Co.,* 205 Tenn. 478, 327 S.W.2d 47 (1959); *Sisk v. Valley Forge Insurance Co.,* 640 S.W.2d 844 (Tenn.App.1982). The findings of the trial court in this case come to us for a review de novo upon the record with a presumption of correctness. T.R.A.P. 13(d). From our review we cannot say that the evidence preponderates against the finding of the trial court that an assignment of the note was made.

■ After finding that there was an assignment of the note, the trial court then found that "the transfer was fraudulent as to the plaintiffs herein under the provisions of both T.C.A. § 66–3–101 et seq. and T.C.A. § 66–3–301 et seq." Judgment was entered setting aside the assignment of the Grantham Note to Nancy Wilson as custodian for Stephanie McIntosh. The court further held that the note was subject to garnishment and execution by plaintiffs for the judgment against Nelms. The guardian ad litem has appealed and the issue presented for review is whether the trial court erred in finding that the assignment of the note by Nelms to his daughter as custodian for his granddaughter was fraudulent.

Transfers or conveyances of property with the intent to delay, hinder or defraud creditors are fraudulent. T.C.A. § 66–3–101 (1982) and T.C.A. § 66–3–308 (1982).

Whether a transfer is fraudulent is determined by the facts and circumstances of each case. *Macon Bank and Trust Company v. Holland,* 715 S.W.2d 347 (Tenn.App.1986). The record in the case before us establishes that on October 21, 1983, Nelms knew that there was a strong proba-

bility that a large money judgment would be rendered against him. At that time, he encumbered all of his assets to the extent that they were beyond the reach of the probable judgment creditor. The assets transferred were obviously more than sufficient to secure the loans for which they were given. Nelms thereupon made another transfer of the Grantham Note to assure that it would be completely out of his hands and beyond the reach of any of his creditors. The record indicates money passing among Nelms and his other family members for the purpose of allowing these family members to acquire title to Nelms' property on its foreclosure by the banks. It is inescapable in this record that Nelms willfully and deliberately attempted to divest any interest he might have in any asset which might be easily reached to satisfy the judgment.

In *Williams v. Spinks,* 7 Tenn.App. 488 (1928), this Court noted:

> The general rule is that the evidence to be sufficient to establish fraud should prove a state of facts which is not fairly or reasonably reconcilable with fair dealing and honesty of purpose, and which lead a reasonable man to the conclusion that fraud in fact existed.

*Id.* at 494.

The trial court specifically found from the record before him that Nelms was guilty of fraud in fact. It is clear that Nelms divested himself of all of his property which might be subjected to the satisfaction of the Weaver judgment. As Chancellor Gibson succinctly points out:

> Every man is presumed to intend the necessary consequences of his acts; and if an act necessarily delays, hinders, or defrauds, creditors, then the law presumes that the act was done with fraudulent intent. If the law adjudges the effect of the conveyance to be to delay, hinder, or defraud, creditors, then the transfer is to be regarded as fraudulent, though this may not have been the intention of the parties to the transfer. In such a case, the intent to defraud is a question of law.

*Gibson's Suits in Chancery,* § 1056 (5th ed. 1955).

We concur in the findings of the chancellor that the effect of Nelms' actions was to hinder, delay or defraud the Weavers in the collection of their judgment and therefore Nelms was guilty of fraud in fact.

The trial court also found that Nelms made a transfer which rendered him insolvent and that by virtue of T.C.A. § 66–3–305 (1982) the transfer was fraudulent as to his creditors. Appellant also presents this issue, but in view of our concurrence with the trial court that Nelms' transfer to his granddaughter was fraudulent in fact, it is not necessary that we consider the question of Nelms' insolvency.

Accordingly, the judgment of the trial court is affirmed, and this case is remanded for such further proceedings as may be necessary. Costs of appeal shall be paid out of the note proceeds now held by the clerk of the trial court.

FARMER, J., and McLEMORE, Special Judge, concur.