IN RE:                                )
                                      )
        NIKOLAS DEAN WELCH,            )
        Minor, Date of Birth, 11/18/91, )   Appeal No.
        Social Security No. [Redacted] )   M1999-02649-COA-R3-CV
                                      )
CHANNON MARIE TUCKER WELCH   )   Dickson Chancery
and Husband,                          )   No. 5396-98
MICHAEL TODD WELCH,           )
                                      )
        Plaintiffs/Appellants,         )
                                      )
                                      )
                                      )
v.                                    )
                                      )
JIMMY D. HILL,                        )
                                      )
        Defendant/Appellee.           )

FILED

February 18, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT FOR DICKSON COUNTY

AT CHARLOTTE, TENNESSEE

THE HONORABLE LEONARD W. MARTIN, CHANCELLOR

TIMOTHY V. POTTER
102 Highway 70 East, Unit 1
P. O. Box 66
Dickson, Tennessee 37056
        ATTORNEY FOR PLAINTIFFS/APPELLANTS


JEFFREY L. LEVY
First American Center, 20th Floor
315 Deaderick Street
Nashville, Tennessee 37238-2075
        ATTORNEY FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

O P I N I O N

        This case involves a mother's petition to terminate the parental rights
of a father. Channon Marie Tucker Welch and Jimmy D. Hill are the biological
parents of Nikolas Dean Hill. Ms. Welch and her husband, Michael Todd Welch,
appeal from the refusal of the chancery court to terminate the parental rights of

Mr. Hill.

Channon Marie Tucker Welch ("the mother") and Jimmy D. Hill ("the father") began a relationship in the summer of 1990, and on November 18, 1991, Nikolas was born to this relationship. The parties continued to cohabit until March of 1992 when the mother moved in with her own father taking Nikolas with her. The father, Mr. Hill, visited regularly with the child and provided him diapers and other essentials. In September of 1993, the mother moved into a place of her own in Tennessee City. In November of 1993, her new boyfriend, Michael Todd Welch, moved in with her. The father continued visiting with Nikolas typically on every other weekend. The father began sending his girlfriend and later wife, Angela, to pick up and drop off Nikolas at the home of the mother and Mr. Welch.

In November 1994 the Department of Human Services brought suit to establish the paternity of Nikolas, and on January 23, 1995, the Juvenile Court of Dickson County found that Jimmy D. Hill was Nikolas' natural father. The court awarded custody to the mother and set child support at $40 per week. Also in January of 1995, the mother and her boyfriend, Michael Todd Welch, were married.

In August of 1995, the father visited Nikolas for the last time. The father made his last child support payment in July of 1997. The reasons for non-visitation and cessation of child support payments are the subject of disputed testimony between the parties. The father asserts that the mother refused to allow him visitation with Nikolas stating "she didn't want me to have anything to do with Nikolas because I wasn't his father anymore."

On March 6, 1997, the father and his wife Angela had another child, Tanner Hill. In early January 1998, the father wrote to the mother a letter stating in part:

> It has been several months since Angela talked to you. Have you given any thought to whether you'll allow Nikolas to visit us. I really miss him. Plus, Tanner is getting bigger and we want him to know his brother. . . . I feel awful, embarrassed and ashamed about not keeping in touch. I hope in the long run he'll understand. I do want to see him and start paying child support again. I think that is the first step.
> . . .
> . . . I know that in the past we've had our falling outs, but that is in the past. Hopefully, we can focus on the future. I want Nikolas to know who his dad is and who his brother is.

> Please write me back. We need to talk about meeting

somewhere and discuss this.

The mother testified that she was glad the father was out of her life and that she did not talk to Nikolas about the father and that Nikolas referred to Mr. Welch as "daddy." She further testified that after August 1995, she did not encourage Nikolas to have a relationship with the father.

The record before the trial court indicates that the mother neither wanted the father to have a relationship with Nikolas or wanted him to pay child support. The father testified as follows:

> She came to my home, me and my wife and her sat down and we talked and I told her I missed Nikolas and I wanted to be with him, I wanted to see him. I wanted him to be in Tanner's life. We went upstairs, I showed her some things that I had been saving for Nikolas and I guess it was, she was probably there an hour or an hour-and-a-half and we went back downstairs and she told me she wanted me to think about something and I said what.

> She asked me if I would give up my rights to Nikolas and I said no. She said that's what he wants that he doesn't know who I am any more. She said look at it this way, this is her words exactly, look at it this way you won't have any child support to pay after that. I said that doesn't matter. It doesn't matter. I wanted to see my son. She told me she would get with Nikolas and they would call me later that evening. She called, she would not let me speak to Nikolas on the phone. She told me that Michael thought it was not a good idea for me to talk to Nikolas, her exact words.

At the hearing, the mother also testified with regard to this same conversation which occurred prior to the filing of the petition to terminate parental rights. She testified as follows:

> I called him and asked him, I told him what we were planning to do that Michael wanted to adopt Nikolas, that Nikolas wanted for Michael to adopt him and that we were going to file a petition and I called to ask him if he would voluntarily surrender his rights so that we wouldn't have to fight with this and wouldn't have to drag Nikolas through it and I was very civil to him, I never was ugly. I just told him point blank whether he surrendered his rights voluntarily or not that this was something that we were going to go through with and I gave him the opportunity to surrender them at that time.

At the conclusion of the trial, the Chancellor made the following statement from the bench:

> . . . I don't always remember the styles of the cases and the case names and so forth and of course at the time I read them, they don't have a Tennessee decision number or a Southwest number but I recall reading one about adoptions and it

3

reminds me of this case and what it says is that even though a person conducts himself so that you would be warranted in terminating his parental rights that he can recant, he can change his mind, he can come back and that makes some sense.

In this respect, the Chancellor was apparently referring to *Ex parte Wolfenden* wherein the court stated as follows:

So, the issue of abandonment should be resolved by the Circuit Court under the following statement of the law:
"Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. It does not follow that the purpose may not be repented of, and, in proper cases all parental rights again acquired. * * * but when abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child." 1 Am.Jur.Adoption of Children, Section 42.

49 Tenn. App 1, 349 S.W.2d 713, 714 (1959); *see also Bowling v. Bowling*, 631 S.W.2d 386 (Tenn. 1982); *Koivu v. Irwin*, 721 S.W.2d 803 (Tenn. Ct. App. 1986). While the 1996 amendment to Tennessee Code Annotated section 36-1-102(1)(G) legislatively overruled the definition of abandonment contained in *Wolfenden, Bowling* and *Koivu*, the burden still rests upon the mother under Tennessee Code Annotated section 36-1-113 to establish abandonment by clear and convincing evidence. The statutory definitions of "willfully failed to support" and "willfully failed to make reasonable payment toward such child's support" as set forth in Tennessee Code Annotated section 36-1-102(1)(D) were found to be unconstitutional in *In Re: Swanson*, 2 S.W.3d 180 (Tenn. 1999).

In the case at bar, the Chancellor held as follows:

1. That to the extent Defendant Jimmy D. Hill could potentially have been adjudged to have abandoned (as the term is statutorily defined) his minor son Nikolas Dean Hill, Defendant's subsequent behavior has demonstrated such a revocation of such behavior that his parental rights should not be terminated.
2. It is in the best interests of the child that the Defendant reestablish and develop an active relationship with Nikolas.

So it is that we have much the same situation as faced the court in *Massengale v. Randolph,* No. 03A01-9708-CV-00373, 1998 WL 131516, at * 4 (Tenn. Ct. App. 1998), wherein the Court of Appeals observed:

While it is true the Trial Judge's opinion relied upon case

4

law repealed by the Legislature, it is clear that he accredited the testimony of [the father] and his witnesses rather than those of the mother and her witnesses on the question of whether his conduct was wilful.

Tennessee Code Annotated section 36-1-113(c) provides that termination of parental rights must be based upon: "(1) a finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and (2) that termination of the parents' or guardians' rights is in the best interests of the child."

Not only did the trial judge in this case fail to find by clear convincing evidence that Jimmy D. Hill had "abandoned" Nikolas but he made an affirmative determination that it was in the best interests of Nikolas for defendant to develop an active relationship with him. The evidence does not preponderate against the findings of the trial judge as to the best interests of Nikolas. T.R.A.P. 13(d).

In this case, the Chancellor saw and heard the witnesses, observed their manner and demeanor and made his decision which is entitled to great weight on appeal. *Weaver v. Nelms*, 750 S.W.2d 158 (Tenn. Ct. App. 1987).

After a careful review of this record, we are compelled to hold that the evidence does not establish under the "clear and convincing evidence" standard of Tennessee Code Annotated section 36-1-113 that defendant has abandoned Nikolas, nor does the evidence preponderate against the findings of the chancellor as to the best interest of Nikolas. We therefore affirm the Chancellor in all respects and remand the case to the Chancery Court of Dickson County for such further proceedings as may be deemed proper. Costs of the appeal are assessed to Appellants, Channon Marie Tucker Welch and Michael Todd Welch.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
PATRICIA J. COTTRELL, JUDGE

5