IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 6, 1999

RICK RAY TINKHAM, ET AL. v. R. JEROME BEASLEY

Appeal from the Circuit Court for Wilson County
No. 10511    Clara Byrd, Judge

No. M1999-02809-COA-R3-CV - Filed November 22, 2000

This appeal involves the proper measure of damages for breach of a contract for real estate. Because the evidence does not preponderate against the trial court's explicit finding that the value of the house at the time of breach was the same amount as the contract price, and because the proper measure of damages is the difference between those two amounts, we must reverse the trial court's award of damages to the sellers.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., joined. William C. Koch, Jr., J., dissenting.

J.P. Barfield, Nashville, Tennessee, for the appellant, R. Jerome Beasley.

John L. Whitfield, Jr., Nashville, Tennessee, for the appellees, Rick Ray Tinkham and wife, Kathy Ann Tinkham.

OPINION

Rick Ray Tinkham and his wife, Kathy Ann Tinkham, filed this action against R. Jerome Beasley, alleging breach of a real estate contract. After the trial court found for the Tinkhams and awarded them $12,000 in damages, Mr. Beasley commenced this appeal. For the following reasons, we reverse the judgment of the trial court.

On May 4, 1997, the Tinkhams entered into a contract to sell their house on Dawn Place in Lebanon, Tennessee to Mr. Beasley for $167,000. As part of the transaction, Mr. Beasley provided $500 in earnest money. The proposed closing date was July 15, 1997. The agreement was contingent on Mr. Beasley obtaining financing of $150,000 and selling his residence on Rolling Meadow Drive.

When it appeared that Mr. Beasley would not be able to sell his house within the contractual time period, Marty Penix, a realtor who represented both the Tinkhams and Mr. Beasley, suggested that the Tinkhams purchase Mr. Beasley's home so he could close on theirs.[1] On July 10, 1997, the Tinkhams entered into a contract in which they agreed to pay Mr. Beasley $15,315.99 for the equity in his home and to assume his loan of $68,184.01. Closing was set for July 31, 1997. An addendum to that contract stated:

> Purchase of Rolling Meadow 1045 is part of 2 step package deal/ Jerome Beasley purchasing 398 Dawn Place! Closing of this property same date as Dawn Place, on or before 7-31-97.

Mr. Beasley signed the addendum. As part of this transaction, the Tinkhams paid $500 in earnest money.

Mr. Beasley did not appear for the closing, although his loan had been approved. The real estate agent sent him the following letter on August 1:

> Dear Jerome Beasley,
>
> We have called, paged & left messages for you to contact us! We are in a dire situation concerning your closing! We are not only going to lose the deals on Dawn and Rolling Meadows, but the builders, the Tinkhams, are contacting their attorney to file suit for damages! You need to meet with us as soon as possible to go over this. Call me at . . . .

According to the realtor, when Mr. Beasley resurfaced, he stated that he could no longer purchase the Tinkham's house because his ex-wife had moved back to her parents' house. The transaction never closed.

The Tinkhams waited over a week and then put the Dawn Place house back on the market. They sold it at auction in December 1997 for $155,000.

The Tinkhams filed a civil warrant in General Sessions Court against Mr. Beasley on December 31, 1997 seeking damages for breach of contract. The General Sessions Court heard the evidence and, on July 31, 1998, informed the parties of its conclusion that Mr. Beasley had breached the contract. The court found that "the evidence is clear that the parties continued to work toward the sale of the house after" July 31. It held that the measure of damages was the difference between the contract price and $155,000, and awarded the Tinkhams $12,000.

---

[1]In the previous twenty years, the Tinkhams had built and sold eleven houses. They used Mr. Penix as a realtor prior to this transaction and have an ongoing relationship with him.

Mr. Beasley appealed this holding to the Circuit Court of Wilson County and filed a counterclaim seeking the $500 in earnest money he had expended. The case was tried *de novo*. After hearing the evidence, the Circuit Court specifically found "the value [of the Dawn Place residence] to be $167,000." The Tinkhams were awarded damages of $12,000. Mr. Beasley appeals the judgment and the trial court's calculation of damages.

I.

Mr. Beasley argues that the trial court erred in determining the damages. He maintains that the proper measure of damages is the contract price less the fair market value at the time of the breach. According to Mr. Beasley, the contract price here was the same as the fair market value, so only nominal damages were appropriate.

Our review of the trial court's decision is constrained by Tenn. R. App. P. 13 (d) which requires us to analyze findings of fact *"de novo* upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise."

> Tenn. R. App. P. 13(d)'s presumption of correctness requires appellate courts to defer to a trial court's findings of fact. *See Taylor v. Trans Aero Corp.*, 924 S.W.2d 109, 112 (Tenn. Ct. App.1995); *Weaver v. Nelms*, 750 S.W.2d 158, 160 (Tenn. Ct. App.1987). Because of the presumption, an appellate court is bound to leave a trial court's findings of fact undisturbed unless the court determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *See Estate of Haynes v. Braden*, 835 S.W.2d 19, 20 (Tenn. Ct. App.1992) (holding that an appellate court is bound to respect a trial court's findings if it cannot determine that the evidence preponderates otherwise). Thus, for the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect.

*The Realty Shop, Inc. v. RR Westminster Holding, Inc.* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

The purpose of assessing damages in a breach of contract action is to make nonbreaching parties whole: to place the injured party "in the same position he [or she] would have been in had the contract been performed." *Hennessee v. Wood Group Enter., Inc.*, 816 S.W.2d 35, 37 (Tenn. App.1991); *see Hiller v. Hailey*, 915 S.W.2d 800, 805 (Tenn. App.1995). However, the injured party "should not profit by the defendant's breach." *Hennessee,* 816 S.W.2d at 37.

In *Turner v. Benson,* 672 S.W.2d 752, 754-55 (Tenn.1984), the Supreme Court enunciated the proper standard for ascertaining damages for breach of a real estate contract:

> [The] general rule and proper measure of damages available to a vendor as against a breaching vendee in a real estate transaction is that the vendor is entitled to the difference between the contract price and the fair market value of the property at the

time of the breach. 77 Am.Jur.2d *Vendor & Purchaser* § 489 (1975); 92 C.J.S. *Vendor & Purchaser* §537 (1955); see also Annot., 52 A.L.R. 1511 (1928).

"The fair market value of realty is the price a reasonable buyer would pay if he were willing to buy but did not have to and that a willing seller would accept if he were willing to sell but did not have to." *Nashville Hous. Auth. v. Cohen,* 541 S.W.2d 947, 950 (Tenn. 1976).

At the close of the evidence, the trial court stated, "I'm finding the value to be $167,000, because that was the amount of the contract, and the damages to be $12,000." Unfortunately for the Tinkhams, a preponderance of the evidence supports the trial court's valuation of the house. *See* Tenn. R. App. P. 13(d). Kathy Tinkham testified that the fair market value of the house was $167,000, although she also stated that the house had been appraised at $171,000. The real estate agent, Mr. Penix, agreed that he felt the fair market value of the property was $167,000. This evidence is not inconsistent with the rule requiring that the fair market value be measured from the date of the breach. *See Turner*, 672 S.W.2d at 754. The fact that the house sold for $155,000 in a forced sale at auction some four months later does not undermine the trial court's decision not to value the home at less than $167,000 because, as Mrs. Tinkham testified, one would expect that property sold at auction would bring a lower price. *See Turner*, 672 S.W.2d at 755 (inferring that the sales price of property sold in a forced sale at auction might not be a reliable measure of the fair market value). Because the evidence that the value of the house was $167,000 is essentially undisputed, this court is clearly bound by the trial court's valuation.

The trial court's award of $12,000 in damages after valuing the property at $167,000 cannot be sustained when the proper measure of damages is applied to the facts as found by the court. The undisputed measure of damages is the difference between the fair market value and the contract price. *See Turner*, 672 S.W.2d at 754-55. Based upon the facts as found by the trial court, the fair market value, like the contract price, was $167,000. Obviously, the difference between those two figures is 0, not $12,000. Because a preponderance of the evidence unquestionably supports the trial court's factual finding on the value of the house, we are constrained to uphold that finding. *See* Tenn. R. App. P. 13(d). Under these circumstances, the law clearly prohibits us from independently finding that the value of the house was less than the amount found by the trial court. *See The Realty Shop, Inc.*,7 S.W.3d at 596. The trial court's factual finding on the valuation of the property leaves us with no legal or factual basis for awarding damages to the Tinkhams. Thus, we must reverse the trial court's decision to award the Tinkhams $12,000.

In light of this finding, we need not reach Mr. Beasley's contention that because Mrs. Tinkham testified that time was of the essence, the contract was unenforceable because it had expired.

II.

Accordingly, the judgment of the trial court is reversed. This case is remanded for any further proceedings which may be necessary. Costs of this appeal are to be taxed to the Tinkhams, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE