# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 9, 2003 Session

## SHARRON JOHNSON, ET AL. V. RODNEY LOCKHART

**Appeal from the Circuit Court for Sumner County**
**No. 19073-C     C.L. Rogers, Judge**

---

**No. M2002-00623-COA-R3-CV - Filed September 5, 2003**

---

Sharron Johnson brought suit against her former husband, Rodney Lockhart, alleging breach of an oral contract to pay equal shares of the college expenses for their son, Paul G. Lockhart. The Circuit Court of Sumner County entered judgment for Ms. Johnson, and Mr. Lockhart appeals. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

L. Anthony Deas, Madison, Tennessee, for the appellant, Rodney Lockhart.

Philip C. Kelly, Gallatin, Tennessee, for the appellee, Sharron Johnson.

## OPINION

After a ten year marriage, Sharron and Rodney Lockhart divorced in 1980. Born to the marriage was one son, Paul G. Lockhart, also known as Greg. The decree of divorce provided that Sharron Lockhart was the primary residential custodian of Greg, and she resided with Greg in Hendersonville, Tennessee. Rodney Lockhart resided in Madison, Tennessee.

Greg completed Hendersonville High School in December of 1996 and then enrolled in Volunteer State Community College in Gallatin where he took freshman courses until May of 1997. His expenses at Volunteer State Community College were paid in equal shares by his parents.

Greg desired to go to a four year college or university that offered an international studies major. He researched institutions that offered this major over the internet and found Stanford, Princeton, the University of Virginia, the University of Miami and New College of South Florida located in Sarasota. Greg and his mother considered the latter two institutions since they were the

most reasonably priced. They drove to Sarasota, Florida to tour the campus of the New College of South Florida but, Greg did not like the small size of this school, which had a student population of approximately 500. Greg also applied to the University of Miami and was accepted for admission by letter dated April 23, 1997. He toured the campus with his mother on May 10, 1997, and his mother (now Mrs. Johnson) left a $150 deposit in order to secure his place in the freshman class. However, Mrs. Johnson cautioned that she would have to talk to Mr. Rodney Lockhart about financial arrangements before Greg could commit to attending the University of Miami because of the expense. Greg applied for financial aid from the University of Miami on forms provided by the school.

The foregoing facts are essentially undisputed and provide the backdrop for the ensuing dispute. The Tennessee Rule of Appellate Procedure 24(c) statement of the evidence then provides:

> Ms. Johnson hosted a high school graduation party for Greg on May 23, 1997. Family and friends attended including Greg's father, Mr. Lockhart. At this party Ms. Johnson testified that she heard Mr. Lockhart state how proud he was of Greg's acceptance at the University of Miami and how this was a golden opportunity for Greg and how Greg was living out Mr. Lockhart's dream. Ms. Johnson stated that Mr. Lockhart announced during the party that he and Sharron were about to send Greg off to The University of Miami. Ms. Johnson testified that on this occasion and at other times, Mr. Lockhart agreed to split Greg's expenses at The University of Miami with her. In July of 1997, Ms. Johnson said she received a financial aid package from the University. Shortly thereafter Ms. Johnson said she sat down with Mr. Lockhart at her house to go over the total cost, as itemized in the package, of sending Greg to the University outside of available grants, financial aid or subsidized student loans. Ms. Johnson testified that Mr. Lockhart again told her at this meeting that he would pay one-half of these expenses as long as Greg made good grades. Ms. Johnson stated that Mr. Lockhart had suggested that they borrow the money from the bank each year. Mr. Lockhart denied saying this. Ms. Johnson said she told him that it would be more economical to take advantage of the University's nine-month installment plan which had a 3% origination fee. Ms. Johnson stated that the Defendant and she had numerous meetings whenever she received correspondence from The University of Miami during this time and that they agreed to go on the University's payment plan.
>
> In late August of 1997, Ms. Johnson, Mr. Lockhart and Greg set out together on a 14-hour long trip in Greg's small car to move Greg in at the University of Miami. Ms. Johnson and Mr. Lockhart moved Greg into the dormitory on a Saturday and bought supplies for him. Before leaving the campus to return on a flight back to Tennessee, Ms. Johnson and Mr. Lockhart went to the register's office at the University and enrolled in the nine-month college payment plan of $811.50 each month and made Greg's first monthly payment. Ms. Johnson stated that at no time while the parties were on this extended trip or thereafter did Mr. Lockhart tell Greg or her that he only intended to pay his half of Greg's college expenses for Greg's first

year of school. She said it was their goal that Greg graduate from the University. She stated that Greg was able to obtain a Pell grant, a University grant and a government loan and that she did not consider having Greg change schools or discontinue his education there after his freshman year.

For nine months after Ms. Johnson and Mr. Lockhart enrolled Greg at the University of Miami, Mr. Lockhart routinely paid his one-half share of Greg's expenses in the amount of $811.50 by check made out to The University of Miami. Mr. Lockhart either personally delivered his checks to Ms. Johnson's house or mailed them. One month Ms. Johnson testified that Mr. Lockhart asked her to go ahead and pay the whole amount and he would reimburse her which he did three days later.

By letters dated May 15, 1998, July 16, 1998, July 31, 1998, August 7, 1998, and September 18, 1998 which were introduced into evidence, Ms. Johnson sent Mr. Lockhart documentation of what Greg's college expenses were. In these letters, Ms. Johnson also stated the amount she had paid and requested to know when she would receive payment of Mr. Lockhart's one-half share. Ms. Johnson stated that Mr. Lockhart neither responded to any of her letters nor did he give any indication at all that he would not be making any future payments as he had in the past. Mr. Lockhart stated that he did not feel obligated to make any future payments. . . .

. . . .

Greg Lockhart testified that he worked at the university's swimming pool and as a night security guard for extra money while he was a student. He said that had his father not agreed to share the costs of his expenses at The University of Miami, that he would have stayed on at Volunteer State Community College after his high school graduation.

Sarah Johnson, Sharron Johnson's mother who lived with her, testified that she was present in the room at the financial meeting between Mr. Lockhart and her daughter when they were reviewing the costs of sending Greg to The University of Miami and that she told them not to send Greg down there only to have him come back prematurely due to financial reasons, and that they both indicated to her that they would not do that.

Rodney Lockhart testified that Ms. Johnson initiated the discussion about Greg's college expenses at the University of Miami and that he told her that he would do all that he could do. He stated that he did not promise to pay one-half of Greg's expenses and that he never said that he would contribute for four years. Mr. Lockhart testified that he did not remember having a conference with Ms. Johnson about Greg's college expenses before the parties left for Miami to move Greg in August of 1997 and that he did not know how much the cost would be prior to going to the school's comptroller's office. Mr. Lockhart admitted that he made the monthly $811.50 payments to Ms. Johnson voluntarily without any prompting from her and that he never informed Ms. Johnson that he would not be making any more payments after Greg's first year at the University. Mr. Lockhart testified that he told Greg

throughout his freshman year that he needed to try and get scholarships because he could not afford it. Mr. Lockhart said that he last spoke with Greg in May of 1998 and that Greg didn't give him the chance to tell him he would no longer pay for his college expenses. Mr. Lockhart verified the fact that by deed dated August 14, 1998, he sold his home in Davidson County, Tennessee for $146,900 and by deed dated August 17, 1998 he purchased property in Wilson County, Tennessee for $210,000.

After Rodney Lockhart stopped paying one-half of Greg's expenses at the University of Miami, Ms. Johnson carried the entire financial responsibility for his education (beyond scholarship and college loans) by cashing out her mutual fund account and liquidating her retirement portfolio.

The trial court found that Sharron Johnson and Rodney Lockhart had entered into a bi-lateral oral contract under which each would pay one-half of Greg's college expenses until he graduated. The trial court further found that Rodney Lockhart had breached the agreement and entered judgment in favor of Sharron Johnson for $20,427.25, representing one-half of the expenses she had paid for Paul G. Lockhart's college expenses at the University of Miami. The court also awarded pre-judgment interest in the amount of $3,398.18. Mr. Lockhart filed a timely appeal.[1]

Appellant asserts the issues on appeal to be:

I.      The doctrine of promissory estoppel is not applicable.

II.     There was no enforceable contract creating liability between Rodney Lockhart and Sharron Johnson.

III.    If there was an enforceable contract between Rodney Lockhart and Paul G. Lockhart, Paul was in breach of it by the end of his freshman year.

IV.     Defendant had no duty to Plaintiff, Sharron Johnson, to reimburse her for college expenses paid by her on behalf of the parties' adult son.

V.      Plaintiff, Sharron Johnson, failed to mitigate damages.

The real issues on appeal might better be stated as:
1.      Does the evidence preponderate against the trial court's finding that a bi-lateral contract existed between Sharron Johnson and Rodney Lockhart whereby each would pay half of Greg's net expenses for four years at the University of Miami?
2.      Does part performance take the contract out of the statute of frauds?

---

[1] This case originated in general sessions court by civil warrant with Sharron Johnson as Plaintiff and Rodney Lockhart as Defendant. After appeal to circuit court, an Amended Complaint was filed joining Paul G. Lockhart as a party-plaintiff. The trial court dismissed the Complaint of Paul G. Lockhart, and no appeal was taken from such action.

3.      If the contract is not supported by consideration, does the doctrine of promissory estoppel apply to estop Rodney Lockhart from relying on lack of consideration?

The right of Ms. Johnson to maintain an action to enforce a contract made by her and Mr. Lockhart for the benefit of Greg is unquestioned. *See Moscheo v. Moscheo*, 838 S.W.2d 226, 228 (Tenn.Ct.App.1992).

Addressing first the existence of the contract, in the general sessions court warrant issued December 3, 1998, Sharron Johnson alleged: "Breach of Contract re: College tuition, board and books for Paul Lockhart." After appeal to circuit court, the Complaint was amended on April 30, 1999. Ms. Johnson alleged an oral contract between her and Mr. Lockhart whereby they would share equally the net costs of Greg Lockhart's college expenses at the University of Miami for the entire four year period. She further alleged that, in furtherance of this contract, Mr. Lockhart, in fact, paid one-half of Greg's college expenses at the University of Miami for two semesters. In answer to this Amended Complaint, Mr. Lockhart denied an agreement of any sort but admitted making several payments to the University of Miami during 1997 and 1998 on behalf of Greg.

The case came on for trial, non-jury, on February 6, 2002. After hearing all of the evidence, the trial court found:

1.      The parties were divorced October 1980. The mother was the primary residential custodian of the one son. The final divorce decree did not include college expenses. The son graduated from high school December 1996 and enrolled in low cost public junior college in his home town. The son applied and received conditional acceptance at the University of Miami May 10, 1997. The son desired to pursue education in international studies. The mother and son needed the Defendant's agreement to pay one-half of the college expense in order for the son, PAUL G. LOCKHART, to attend the University of Miami. Beginning May 23, 1997 through July 1997 Plaintiff had several financial discussions with the Defendant, where the Defendant agreed to pay one-half of the college expenses for the son to attend the University of Miami. Relying upon the Defendant's agreement, the Plaintiff signed and submitted the final acceptance documents to the University of Miami in August 199[7]. Plaintiff's son then left the low cost public junior college. Plaintiff and Defendant moved the son in at the University of Miami. Plaintiff and Defendant met with the college financial office and established a loan payment plan for payment of the college expenses. The son thereafter attended the University of Miami. The Defendant paid his one-half of the college expenses during the son's first year. The Defendant, in August of 1998, did unilaterally and without explanation or any communication with the Plaintiff, refuse to continue to pay college expenses. Plaintiff immediately brought action in December 1998 against the Defendant. The son graduated May 2001 from the University of Miami in international studies. The mother and son paid out a total of Forty Thousand Eight Hundred Fifty Four and 00/100 ($40,854.00) Dollars in college expenses for the last

-5-

three (3) years during this pending litigation. Defendant made no payments after August 1998.

      2.     The Court finds that promissory estoppel exists and the parties had an enforceable contract. *Calabro v. Calabro*, 873 15 S.W. 3 873 (Tn.Appeals 1999).

      3.     The Plaintiff, SHARRON JOHNSON, is entitled to a judgment for one-half of the college expenses totaling Twenty Thousand Four Hundred Twenty Seven and 25/100 ($20,427.25) Dollars against the Defendant, RODNEY LOCKHART. The Court further exercises discretion and awards Plaintiff pre-judgment interest from August 1998. The Defendant was continuously advised of the amounts due but chose not to pay or even communicate.

In an appeal of a non-jury case that is predicated upon facts as established by disputed testimony, an appellant is in an uphill climb. Under Tennessee Rule of Appellate Procedure 13(d), an appellate court reviews the record *de novo* with a presumption of the correctness of the findings of fact by the trial court. In such cases, the trial court has the opportunity to observe the manner and demeanor of witnesses as they testify and may judge their credibility accordingly, and in such a case, the rule on appellate review is well settled, as was stated by this Court in a comparable situation:

> The trial court apparently found the testimony of the defendants' witnesses to be more persuasive on the issue of whether a duplicate key was maintained in the school vault. It is well settled that "[t]he weight, faith, and credit to be given any witness's testimony lies in the first instance with the trier of fact who has the opportunity to observe the manner and demeanor of the witnesses as they testify." *Koch v. Koch*, 874 S.W.2d 571, 574 (Tenn.App.19093) (quoting *Weaver v. Nelms*, 750 S.W.2d 158, 160 (Tenn.App.1987)). "The credibility accorded will be given great weight by the appellate court." *Id.*

*Doe A v. Coffee County Bd. of Educ.*, 925 S.W.2d 534, 537 (Tenn.Ct.App.1996).

The evidence certainly does not preponderate against the finding of the trial court of a bi-lateral oral contract to pay equally the net expenses of Greg Lockhart at the University of Miami for four years. Inherent in the finding of the court is a determination that the contract was supported by adequate consideration.

> The question of what constitutes consideration adequate or sufficient to support a contract has been addressed by a number of Tennessee courts. The court in *University of Chattanooga v. Stansberry*, 9 Tenn. App. 341, 343 (1928) defined consideration as "either a benefit to the maker of the promise or a detriment to, or obligation upon the promise." (citing *Foust v. Board of Education*, 76 Tenn., (8 Lea), 552). Courts have been willing to find a contract based on facts from which a jury could infer the requisite consideration.
>
> > For there to be a consideration in a contract between parties to the contract it is not necessary that something concrete and tangible move

from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration. The jury may draw any reasonable and natural inference from the proof and if by inference from the proof a benefit to the promisor and detriment to the promisee might be inferred this will constitute a valid consideration.

*Palmer v. Dehn*, 29 Tenn.App. 597, 599, 198 S.W.2d 827, 828 (1946); *see also Trailer Conditioners, Inc. v. Huddleston*, 897 S.W.2d 728, 731 (Tenn.App.1995); *Robinson v. Kenney*, 526 S.W.2d 115, 118-19 (Tenn.App.1973).

*Calabro v. Calabro*, 15 S.W.3d 873, 876-77 (Tenn.Ct.App.1999).

Sharron Johnson was under no more of an obligation to pay one-half of Greg Lockhart's net expenses at the University of Miami for four years than Rodney Lockhart. Both wished to help their adult son to get a college education in international studies at the University if Miami rather than to continue at a relatively inexpensive community college. The detriment to Ms. Johnson is that she undertook, on the strength of the promises of Rodney Lockhart, to pay half of Greg's net expenses for four years when she was not otherwise obligated to do so. The contract was supported by adequate consideration.

While Mr. Lockhart does not raise the statute of frauds as a defense on appeal,[2] it is obvious that the oral contract could not be performed in one year, and the statute of frauds (T.C.A. 29-2-101(a)(5)) would be applicable unless the contract, under the facts of the case, comes under a recognized exception to the applicability of the statute of frauds. This statute provides that no action shall be brought, "upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract; unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party." T.C.A. 29-2-101(a)(5)(2000).

It is long settled in Tennessee that part performance of a contract, otherwise invalid under the statute of frauds, will render the statute inapplicable. In sustaining an oral contract on part performance and overruling a defense based upon this same statute of frauds, the supreme court stated:

"This doctrine of partial performance to take the verbal contract out of the operation of the Statute of Frauds is purely an equitable doctrine and is a judicial interpretation of the acts of the parties to prevent frauds. The acts of the appellant relied on as partial performance had been done by him in pursuance to the averred contract and agreement and are clearly referable thereto. 'The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount

---

[2] It may well be that Appellant realized that if the four year contract was found by the court to exist as a matter of fact, that it would be futile to deny part performance under this record.

to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense.' 49 Am.Jur., Sec. 427, page 733. We think this quotation fairly sums up the obligation of the complainant in the instant case and that by the averments of the bill the complainant has met these obligations."

*Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 663 (Tenn.1983) (quoting *Buice v. Scruggs Equip. Co.*, 250 S.W.2d 44, 48 (Tenn.1952)); *see also Steelman v. Ford Motor Credit Co.*, 911 S.W.2d 720 (Tenn.Ct.App.1995); *Calabro*, 15 S.W.3d 873.

In this case, part performance by both parties is conclusively established, as both of them paid their respective shares of the net expenses for Greg at the University of Miami through the first two semesters. While it is true that such payment would be consistent with a mere voluntary payment by both parties, which could be discontinued at any time, the trial court has made the factual determination that the oral contract was a four year contract. The evidence does not preponderate against that crucial finding of fact, as the payments by both parties are clearly in partial performance of the four year contract. The statute of frauds is, thus, inapplicable under *Blasingame, Steelman* and *Calabro*.

While the doctrine of promissory estoppel is unnecessary in this case since the oral contract was supported by adequate consideration, the trial court applied the doctrine as an alternative basis for holding Mr. Lockhart liable, and the evidence does not preponderate against such holding. This Court has held:

> We likewise hold that the trial court erred in dismissing EnGenius's promissory estoppel claim. As with EnGenius's implied contract claim, EnGenius's claim of promissory estoppel is not dependent upon the existence of an express contract between the parties. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73-74 (2d Cir.1989); *United Magazine Co. v. Prudential Ins. Co.*, 877 F.Supp. 1076, 1084-85 (S.D.Ohio 1995); *Quake Constr., Inc. v. American Airlines*, 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990, 1004 (1990). Under the theory of promissory estoppel,
>
>> [W]hen one . . . by his promise induces another to change his situation, a repudiation of the promise would amount to a fraud. Where one makes a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and where such promise does in fact induce such action or forbearance, it is binding if injustice can be avoided only by enforcement of the promise.

*Foster & Creighton Co. v. Wilson Contracting Co.*, 579 S.W.2d 422, 427 (Tenn.App.1978) (citing 17 C.J.S. *Contracts* § 74); *see also Restatement (Second) of Contracts* § 90(1) (1979). This theory of recovery is sometimes referred to as "detrimental reliance" because, in addition to showing that the defendant made a promise upon which the plaintiff reasonably relied, the plaintiff must show that this reliance resulted in detriment to the plaintiff. *Foster & Creighton Co.*, 579 S.W.2d at 427; *Quake Constr.*, 152 Ill.Dec. 308, 565 N.E.2d at 1004.

*EnGenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12, 19-20 (Tenn.Ct.App.1997).

Further, Promissory estoppel has been explained by this Court as:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Calabro*, 15 S.W.3d at 878 (quoting *Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn.Ct.App.1991)).

The trial court held that the representations and the actions of Mr. Lockhart were adequate to supply the necessary elements of inducement and reliance, and the evidence does not preponderate against such finding.

The judgment of the trial court is in all respects affirmed, and the case is remanded for such further action as may be necessary. Costs of the cause are assessed Appellant.

_____
WILLIAM B. CAIN, JUDGE