IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2003 Session

## C & G SEEDS, INC. v. SAMMY TAYLOR

**Appeal from the Circuit Court for Smith County**
**No. 4974     Clara Byrd, Judge**

───────────────

**No. M2002-01572-COA-R3-CV - Filed December 1, 2003**

───────────────

A farming supply store brought suit against an account holder for money due on an unpaid account. The trial court found that the store failed to prove any monies were owed. The farming store appeals, arguing that the evidence preponderates against the trial court's decision. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

J. Branden Bellar, Carthage, Tennessee, for the appellant, C & G Seeds, Inc.

Sharon Linville, Hartsville, Tennessee, for the appellee, Sammy Taylor.

# MEMORANDUM OPINION[1]

C & G Seeds ("C & G"),[2] a farm supply store located in Riddleton, Tennessee, is owned by George McDonald. In the early 1990s, Sammy Taylor set up an account at C & G to purchase seed corn, hybrid seed corn, and crop protector chemicals.[3]

C & G brought suit on December 7, 2001 against Mr. Taylor for the unpaid balance due on his account.[4] At the bench trial, the trial court heard testimony from Mr. McDonald and the Taylors. In addition, the trial court conducted a thorough review of C & G's business records pertaining to Mr. Taylor's account, and unsuccessfully attempted to reconcile them. C & S's invoices did not match the computer printouts, and no record could provide a current and accurate account balance.[5]

The trial court found that C & G had failed to prove that Mr. Taylor owed the store any money. In fact, the trial court was concerned that the Taylors may have been overcharged for supplies or charged for supplies not received since many of the invoices either stated different prices for the same product or did not bear a signature to verify receipt of the supplies. The trial court noted that:

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]According to the trial transcript, the proper name for the business is C & G Seeds, not C & G Seeds, Inc.

[3]At the time the products were received by Mr. Taylor, a handwritten invoice would be issued showing both the quantity of the item (whether in pounds, bushels, ounces, etc.) and price of each item purchased. The invoices were not always signed by the person receiving the goods. At the end of each month, C & G generated a computer invoice totaling the purchases for the month on the account held by Mr. Taylor. Mr. Taylor was thus billed on a monthly basis for his purchases at C & G. Unfortunately, the invoices did not correspond to the computer generated monthly bill so it was not possible to match purchases with the end of the month statement.

[4]Mr. McDonald testified that as of the date of trial, the outstanding principal on the account was $8,434.69, the outstanding interest was $14,540.69, and the total past due on the account was $22,975.38.

[5]Mrs. Taylor testified that she had been the bookkeeper for Mr. Taylor for nine years and that she had contacted Mr. McDonald several times regarding invoices and receipts. Mrs. Taylor stated that "there were a lot of missing tickets, according to the [monthly] statements, and I just never could get it - - anything to match." Mr. McDonald agreed somewhat, testifying that Mrs. Taylor had contacted him on more than one occasion to inform him that she was not receiving all of the invoices or receipts for what she had been billed for on the monthly statement of the account. Mr. McDonald stated that he regularly sent invoices to Mr. Taylor at his home address. Mr. McDonald also asserted that he sent additional copies of the handwritten invoices to Mrs. Taylor in response to her requests. She acknowledged that Mr. McDonald sent her most of the invoices after her telephone calls, but that she never did receive all of the handwritten invoices and some of them she did receive were unsigned.

2

However, in going through these invoices, **I find that Mr. Taylor – he and his wife both stated they couldn't get the statements to match up to the invoices, so that's exactly what I tried to do.**[6]

---

[6]The trial court listed examples of discrepancies, all of which are simply findings of a failure to prove the amount owed:

[t]he following discrepancies occurred beginning with the invoice on 04/16/96. Mr. Taylor apparently got 44 bags of 3394 Pioneer. He was billed for 40 bags of 3394 F-14 at 73.60 a bag -- and this may mean more to Mr. Taylor than it does to me - - and 5 bags of 3394 at 71.10. He was apparently overcharged at least one bag on that bill, which would be $71 or 73. I don't know.

Because later - - apparently he's ordering the same thing every time because two days later he comes in and orders 36 bags of number 3394, but he's only billed 57 a bag for that, which leads me to conclude that he was overcharged $15 a bag two days prior, or he was undercharged, but there's a big discrepancy.

Then moving forward on the date of 04/18/96, Mr. Taylor actually signed this bill but he only signed for 33 bags of Altrazine, but he was charged for 825 bags, which are 2.65 a bag.

Well, he's charged per pound. I don't know if they're pound bags or what. It's a big discrepancy which could make a big difference, because 825 at 2.65 a pound is 2,186, whereas 33 times 2.65 is some $70. So that's a big discrepancy.

And again on 04/25 we've got 3394, again 32 bags of it. He was charged $71 a bag for that, but he had been charged $52 a bag - - $57 a bag nine days earlier.

Then on 05/20 whoever wrote out the ticket for Admire charged him $70 a pint, whatever that is. But I saw Admire later on in here at $72 earlier - - yeah, on the 05/10 invoice it says 72 a pint, but on the 05/20 it's 70 a pint. That's a discrepancy.

Then when I get to 05/23/96, Atrazine again, quantity 300. His ticket only says 12. I can understand why Mr. and Mrs. Taylor can't match these up. It says quantity 300 at 2.65 a pound. Devrinol, his ticket only says 4 but he was charged for 16.

And I can't tell on the 06/25/96 invoice if he got 5 gallons - - looks like someone had written 35 and scratched it out, and he was charged for 15. I don't know. I've just got a question mark there. I don't know how much he got.

Then 06/29 his ticket says 3 cases of Graxomone, and then the quantity he was charged for says 15 at 32.70. It says one case of Surf Aid. What he was charged for was 4 quantity at 6.75. Orthene, there's one case. Well, I guess if it's $10 a can that would be - - maybe a case is 12 at 10 a can.

Then when we got into the wheat, evidently there's a difference between a bag and a bushel. Sometimes he got charged for bags, sometimes it was converted to bushels. But it's a difference of bags and bushels.

Now, he signed an invoice on 10/14/96. It says 200 - - quantity, 200 of them. What he was

(continued...)

3

*****

> But when I look at [Mr. Taylor's] total charges compared to what he charged in the past, it appeared to me it just didn't look right. Back in 94 he had a $41,000 account; '95 he had a $51,726 account; and then it jumps up in '96 to $83,669. Mr. Taylor never could understand it. His wife couldn't understand it. And they've paid some $79,000 on that account.

> And I think due to the discrepancies in the billing that I believe it's - - that Mr. Taylor is paid in full. He paid $79,000, and I'm sure that was hard to come by when the $83,000 he was charged with would pay for almost two years of his farming accounts in the past. So I'm going to - - based on these exhibits, I'm going to say Mr. Taylor owes nothing, and so it would be a judgment for Mr. Taylor.

On appeal, C & G argues that the evidence preponderates against the trial court's findings. Our review of this record is *de novo* upon the record of the trial court, accompanied by a presumption of correctness of factual findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Cross v. City of Memphis*, 20 S.W.3d 642, 643 (Tenn. 2000).

> This court has held that in order to prove the existence of an account,

> The general principles of evidence apply to the proof of accounts. The ordinary way of proving accounts is of course to prove each item thereof, the quantity and value, unless an implied or express assent to the correctness of the account can be shown. The correctness of an account, may, like any other fact, be established by circumstantial evidence, but the circumstances must not be too remote or far-fetched, but must be such as to afford a reasonable proof of the existence of the fact attempted to be deducted therefrom.

*Cumberland Grocery Co. v. York*, 9 Tenn. App. 316, 317-18 (1929).

---

[6](...continued)
> billed is $11 a bushel. But on 10/12 when he ordered, he ordered 100 bags, not 100 bushels, and he was charged for 100 bushels.

> It made me wonder if all of these were bags and should have been converted to the bushel price which was different. For example, on the 10/15 invoice somebody went back and converted it to bushels. 200 bags of hickory wheat is 166.67 bushels, and that's what he was billed for.

> And somebody converted it on 10/18, 250 bags of coker to 208.33 bushels, and that's what he was charged for. But on other days it wasn't converted to bushels, so I don't know what happened there.

4

Of course, the burden of proof was on C & G. In the case herein, while Mr. McDonald sufficiently established the existence of an account between C & G and Mr. Taylor, he did not sufficiently prove the correctness of the amount he asserted was owed by Mr. Taylor. The evidence that Mr. McDonald submitted included only his computerized monthly billing statements and handwritten invoices, only a few of which were signed by the person receiving the goods. There was no proof submitted by either party that Mr. and Mrs. Taylor actually received all of the items that they were billed for by C & G or that they or someone working for them actually charged all of the items billed to their account. The invoices, even including the unsigned ones, did not match the monthly billing. While all of the bills were entered into evidence, C & G did nothing to prove that Mr. Taylor owed more than he had paid. As to the interest charged on the account, although some of the invoices indicate an intent to charge an 18% annual interest rate on invoices over 45 days past due, Mr. McDonald testified that he and Mr. Taylor agreed to reduce that amount to 12% at one point in time, and 5.04% at another time. Mr. Taylor does not remember ever agreeing to an interest rate. Mr. McDonald did not produce any type of writing which evidenced an agreement as to the interest rate to be charged on the account for any past due amounts.

Based upon our review of the record, we find that the evidence does not preponderate against the trial court's findings. The documentary evidence produced by C & G does not establish the amount claimed as owing. To the extent findings rely on credibility determinations, in a non jury case, the weight, faith and credit to be given to a witness' testimony lies in the first instance with the trial judge who has the opportunity to observe the manner and demeanor of the witnesses as they testify. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991); *Weaver v. Nelms*, 750 S.W.2d 158, 160 (Tenn. Ct. App. 1987), and we give great weight to the trial judge's findings on issues involving credibility of witnesses. *Randolph v. Randolph*, 937 S.W.2d 815, 818 (Tenn. 1996).

Because the evidence does not preponderate against the trial court's finding that C & G failed to prove an amount owing, the judgment of the trial court is affirmed. Costs of the appeal are taxed to C & G Seeds, Inc.

_____
PATRICIA J. COTTRELL, JUDGE

5